# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ISMETA KADRIBASIC,<br><br>    Plaintiff,<br><br>v.<br><br>WAL-MART INC..<br><br>    Defendant. | Civil Action No.: 1:19-cv-03498-SDG-CCB |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. In 2003, Walmart hired Plaintiff as a part-time cashier. (Kadribasic Dep. 43:6-11; Ex. 2 to Kadribasic Dep.).

2. Over the next ten years Walmart promoted her eight times and ultimately made her the head manager of the Snellville Sam's Club in 2013. (Kadribasic Dep. 43:21-52:17; Ex. 2 to Kadribasic Dep.).

3. In March 2017, Walmart again promoted Plaintiff to be the club manager of the Duluth Sam's Club because she was doing a "great job" in Snellville. (Lowe Dep. 20:2-25, 93:18-93:16; Kadribasic Dep. 54:3-55:6).

4. Duluth was a larger club than Snellville (Kadribasic Dep. 55:1-4).

5. The March 2017 promotion came with a substantial pay raise (Ex.1, Pay Data).

1

6. When Plaintiff started at Duluth, the club was in bad shape and was a "challenging store." (Lowe Dep. 20:12-25; Martin Dep. 10:15-18).

7. In February 2018, Walmart terminated five "poor performing" club managers in the Atlanta area. (Lowe Dep. 94:16-95:5; Kadribasic Dep. 83:8-22; Keasler Dep. 8:14-22; Taylor Dep. 59:13-16, 61:4-23).

8. Walmart **did not** terminate Plaintiff's employment in February of 2018. (Taylor Dep. 63:18-22).

9. Instead of terminating her employment, in February 2018, Walmart paid Plaintiff a bonus of $107,830.18 for her good performance at Duluth. (Ex. 2, Bonus, Kadribasic Dep. 220:14-221:19).

10. In March 2018, one year after Plaintiff's start as the Duluth Sam's Club manager, the club was in a better place than when she took over and was the club "moving in the right direction." (Lowe Dep. 21:1-22:17, 97:6-15; Martin Dep. 34:22-35:6, 38:11-17, 38:21-39:1).

11. In April of 2018, Angela Taylor look over as manager of the Atlanta market. (Taylor Dep. 12:2-5).

12. Ms. Taylor had a reputation for not liking managers who took leave. (Melson Dep. 95:17-96:19; Kadric 1 Dep. 77:15-82:25).

13. Ms. Taylor immediately assigned a co-manager to assist Plaintiff "because [she was] pregnant." (Kadribasic Dep. 201:22-202:22; 290:10-291:6).

14. In April, June, and August 2018: Plaintiff raised complaints that Ms. Taylor retaliated against her because of her upcoming maternity leave. (Kadribasic Dep 194:4-195:1, 204:5-206:2).

15. On June 26, 2018, an incident occurred at Plaintiff's club wherein one set of doors may have been left unlocked for six (6) minutes at a time when the doors should have been locked. Store photographs show an employee locking the doors less than six minutes after Plaintiff left the club. (Ex. 22 to Taylor Dep. (compare p. 5 and p. 6); Kadribasic Dep. 317:6-320:21).

16. Plaintiff discussed the June 26, 2018 incident with Walmart managers on July 10 and was <u>not</u> issued a disciplinary coaching. (Ex. 37 to Kadribasic Dep., p. 14; Kadribasic Dep. 316:20-317:2).

17. Plaintiff met with Ms. Taylor about this on July 12 and again Ms. Taylor did <u>not</u> discipline Plaintiff. (Kadribasic Dep. 197:1-198:24).

18. Later, Manager Harbel similarly left the tire center door unlocked, and was not disciplined. (Martin Dep. 98:13-99:5).

19. After returning from maternity leave on October 9, 2018, Plaintiff found the club "falling apart." (Kadribasic Dep. 212:21-23; Kadric 1 Dep. 19:2-21:5, 27:19-28:7).

20.     This was documented in nearly ninety photographs taken by Plaintiff. (Kadribasic Dep. 232:13-236:5, 360:24-361:8; Ex. 23 to Taylor Dep.; Taylor Dep. 45:2-46:1)

21.     At least half of the photograms show Walmart standards violations. (Harbel Dep. 12:8-14:6; *see also* Taylor Dep. 44:10-45:1).

22.     Marvin Ramsey did not properly merchandise or stock the endcaps, which impacted profitability, nor did he complete necessary paperwork. (Kadric 1 Dep. 23:11-25:9; Melson Dep. 15:18-21:21).

23.     Plaintiff sent the 90 photographs to Ms. Taylor within the first week of returning from maternity leave. (Kadribasic Dep. 232:13-234:3).

24.     However, when alerted to this by Plaintiff, Ms. Taylor did not investigate or discipline Ramsey; and later promoted him. (Taylor Dep. 47:23-48:17, 50:1-14).

25.     On October 18, 2018, about ten days after returning from maternity leave, Plaintiff injured her back while pushing a pallet of merchandise. (Kadribasic Dep. 212:24-213:1).

26.     That day, Plaintiff reported her injury to a salaried member of management named Ms. Kadric and completed the written associate incident report required by Walmart policy. (Kadribasic Dep. 239:14-240:17, Ex. 28 to Kadribasic Dep.).

27.     Further, Kadric emailed other relevant managers (including Ms. Taylor) about this injury. (Kadric 1 Dep.30:23-33:1).

28.     On October 21, 2018, Plaintiff emailed Ms. Taylor regarding her injury. (Ex. 30 to Kadribasic Dep.).

29.     Ms. Taylor responded without mentioning any alleged rule violation. (*Id.*).

30.     On October 28 or 29, 2018, Plaintiff and Ms. Taylor had an in-person conversation at the Duluth club where Plaintiff broke down, started crying, telling Ms. Taylor she was in pain due to her back. (Taylor Dep. 149:10-151:3; Kadribasic Dep. 132:2-134:17, 177:21-178:12, 185:5-15, 346:23-350:3).

31.     Plaintiff requested "**a couple of weeks**" leave on October 28/29, November 8, and November 9 and attended doctors' appointments for her disability on three of her last five work days. (Kadribasic Dep. 277:5-12).

32.     On October 29, 2018, Ms. Taylor witnessed Plaintiff have a "break down" and Plaintiff told Ms. Taylor about needing leave due to her severe pain. (Taylor Dep. 150:12-151:2).

33.     Ms. Taylor sent a text message saying Plaintiff "just had a breakdown with me so be ready…" (Ex. 3, Breakdown Text).

34.     Also, on October 29, Plaintiff went to a doctor's appointment for her injured back. (Ex. 31 to Taylor Dep).

5

35. Following her October 29 appointment, Plaintiff texted to Ms. Taylor, "I just finished with the Dr. going home – I am in an incredible amount of pain…The dr. referred me to specialists and ordered an MRI. **My restrictions still remain the same**." (Ex. 29 to Taylor Dep) (emphasis added).

36. On November 6, 2018, Plaintiff texted Ms. Taylor, "I had physical therapy yesterday and I am in a lot of pain this morning…I don't think I will make it to work today." (Ex. 4, Text Messages, p. 12).

37. A few minutes later, Ms. Taylor sent a text message to a loss prevention co-worker linking Plaintiff's injury to a new discussion of discipline: "Tina is constantly saying she is in pain and not working. How should we proceed with her? I'm going to have James enter the third-level coaching into the system." (Ex. 34 to Taylor Dep.; Taylor Dep. 163:16-165:17).

38. Later that day, the loss prevention co-worker texted Ms. Taylor discussing the financial impact Plaintiff's upcoming leave would have on the club saying: "**She is going to cause us major los[s]**. This will be the first thing I will work on tomorrow." (Ex. 34 to Taylor Dep.; Taylor Dep. 169:21-171:25) (emphasis added).

39. Ms. Taylor knew that "the accident cost [for Plaintiff] is going to be great" and resulting diminished profitability decreased her bonus eligibility. (Taylor Dep. 19:1-19, 24:6-25:11, 170:2-171:7).

40. On November 7, 2018, Plaintiff visited her orthopedist and was not at work. (Ex. 50 to Kadribasic Dep; Kadribasic Dep. 366:17-367:4).

41. On November 8. 2018, Plaintiff, Ms. Taylor, and Kadric meet at the Duluth club; they conduct a "walk through" of the club's preparation for a "One Day" sales event that is to occur on the coming Saturday, November 10. (Kadribasic Dep. 367:5- 369:15; Kadric 1 Dep. 45:22-47:15, 53:16-54:1).

42. Ms. Taylor comments that the club looked "amazing." (Kadric 1 Dep. 53:24-25; *see also* Kadribasic Dep. 367:5- 369:15; Kadric 1 Dep. 45:22-47:15, 53:16-54:1; Taylor Dep. 177:14-22, 179:12-16).

43. Ms. Taylor reviewed the "One Day" sales event binder and approves this binder. (Kadribasic Dep. 275:12-276:10, 377:20-25; Kadric 1 Dep. 49:7-52:18; Taylor Dep. 183:20-184:2).

44. During the walkthrough, Plaintiff was having a hard time walking and was sweating. (Kadric 1 Dep. 48:16-20).

45. Plaintiff asked for a break twice and Taylor says "not now." (Kadric 1 Dep. 47:16-49:1; Kadribasic Dep. 180:8-181:2).

46. Later in the day on November 8, Plaintiff went to physical therapy, the orthopedist, and ultimately the emergency room. (Kadribasic Dep. 378:1-15; Ex. 5, Medical Records, p. 8-23).

47.     Plaintiff told Ms. Taylor about her ER visit. (Taylor Dep. 190:20-191:25; Ex. 4, p. 13).

48.     The emergency room physician told Plaintiff that she should not work on Friday, November 9. (Ex. 50 to Kadribasic Dep.; Kadribasic Dep. 378:17-380:1).

49.     Plaintiff made Ms. Taylor aware, and Ms. Taylor did not object. (Ex. 4, p. 13).

50.     The night of November 8, Plaintiff informed her workers' compensation adjuster, an agent of Walmart, of the hard time that she was having with Ms. Taylor and need for leave. (Kadribasic Dep. 135:12-14, 276:21-277:15).

51.     On November 9, Plaintiff sent a text message to Ms. Taylor asking for leave because of "horrible" pain that caused her to keep "calling out." (Kadribasic Dep. 136:1-6, 185:25-186:3, 191:22-193:4, 390:13-391:14).

52.     The afternoon of November 9, Plaintiff also submitted a request for FMLA leave on Sedgwick. (Kadribasic Dep. 132:2-133:20, 414:6-16).

53.     On November 8 and 9, 2018, within a thirty-six hour period, Ms. Taylor issued Plaintiff three disciplinary coachings and terminated her employment. (Kadribasic Dep. 369:18-24; 409:3-412:10).

54.     In the eight years prior to 2018, Plaintiff received zero disciplinary coachings. (Ex. 6, Responses to First RFAs).

55. Walmart admits Plaintiff had three-quarters of her FMLA leave remaining at the time of her termination. (Ex. 21 to Taylor Dep., p. 11 (eight weeks available); *see also* Doc. 8, ¶¶ 3, 68-69 (admitting eligibility).

56. Ms. Taylor was aware that Plaintiff went to the doctor and physical therapy "quite a bit." (Taylor Dep. 154:17-157:12, 225:20-226:2).

57. Plaintiff also told Ms. Taylor that she had problems walking and that her back hurts whether she walks or sits. (Taylor Dep. 156:6-15).

58. Ms. Taylor admits she did not notify Plaintiff of her FMLA rights. (Taylor Dep. 152:25-154:8).

59. Walmart policy requires that Ms. Taylor "recognize when associates request for time off for an FMLA-qualifying circumstance and direct them to contact Sedgwick." (Ex. 18 to Taylor Dep.; Taylor Dep. 16:22-18:22).

60. Walmart denied Plaintiff's requests for leave. (Kadribasic Dep. 391:18-393:5).

61. Plaintiff's back injury got progressively worse from October 18 – November 9, and substantially limited at least her ability to sleep, walk, and perform household tasks. (Kadribasic Dep. 216:19- 219:9; Taylor Dep. 229:3-17; Ex. 5).

62. On the day before her termination, Plaintiff performed the essential functions of her position, (Melson Dep. 26:2-18; Kadribasic Dep. 170:17-176:9; Kadric 1 Dep. 38:9-39:16).

63. Walmart policy is to "to give a coaching soon after the bad activity occurred." (Lowe Dep. 98:19-99:13).

64. Four long-tenured managers testified that a four month delay is highly atypical. (Mathews Dep. 5:19-6:2, 8:20-10:8 (fifteen year manager); Martin Dep. 7:22-25, 87:2-88:18 (twelve year manager); Harbel Dep. 55:24-56:18 (fifteen year manager); (Keasler Dep. 16:23-19:1 (twenty-two year manager aware of one multi-month sexual harassment investigation).

65. Ms. Taylor disciplined Plaintiff on <u>November</u> 8 because four months earlier on <u>June</u> 26 she "failed to ensure that the outside and inside entrance door was deadbolted." (Ex. 28 to Taylor Dep.).

66. The investigation into Plaintiff's rule violation was completed around June 30. (Ex. 22 to Taylor Dep. (transmitting the investigation PDF); Taylor Dep. 92:12-15).

67. At Plaintiff's workers compensation deposition, Ms. Taylor testified that she coached Plaintiff for failing to lock the door *before* her October 18 injury. (Taylor Dep. 81:1-15; Exhibit 20 to Taylor Dep. 27:17-28:10, 44:16-21, 48:17-25; Taylor Dep. 83:10-84:22).

68. Then, in this litigation as documents were produced, Ms. Taylor swore in verified interrogatories that she coached Plaintiff on October 29 for the unlocked doors. (Ex. 21 to Taylor Dep., p. 5; Taylor Dep. 86:17-88:21).

69.     It was later revealed that Plaintiff was coached for the unlocked doors after her injury and within thirty-six hours of her termination. (Taylor Dep. 88:22-90:25).

70.     Ms. Taylor also gave false testimony in her involvement in the unlocked door coaching to create the perception that she was not involved in all of Plaintiff's discipline. "I was not a part of sitting in on this coaching." (Ex. 20 to Taylor Depo., 28:11-29:10).

71.     Ms. Taylor also testified that "The Second Coaching was given to Plaintiff by Darryl Stinson and Katie Parker was a witness." (Ex. 21 to Taylor Dep, p. 5; Taylor Dep. 107:4-24).

72.     In actuality, Ms. Taylor was the only manager in the room with Plaintiff for the unlocked door coaching and Stinson joined via telephone. (Taylor Dep. 106:2-9).

73.     Harbel left the tire center door unlocked. (Martin Dep. 98:13-99:5).

74.     On November 9, Ms. Taylor coached Plaintiff because "she didn't report the accident. She had the accident on [October] 18th. She didn't report it until [October] 21st. That's what the coaching is about. Has nothing to do with all the other stuff." (Taylor Dep. 116:19-120:4; Ex. 20 to Taylor Dep. 43:3-44:11; Ex. 25b to Taylor Dep.) (abandoning other issues in the coaching).

75.     The reporting policy requires that employees report injuries "to their supervisor **or <u>a member of management</u>**." (Ex. 30 to Taylor Dep) (emphasis added).

76.     Plaintiff satisfied the policy by notifying Kadric, a member of management, on the day of the incident. (Taylor Dep. 131:23-25, Kadric 1 Dep. 33:2-14, 35:14-21).

77.     Then, the day of the incident, Kadric emailed the market-level managers informing them of Plaintiff's injury. (Kadric 1 Dep. 30:21-33:1, 121:21-122:18, 123:20-124:11).

78.     It was Kadric's responsibility to enter the injury into the electronic IRS system. (Taylor Dep. 134:11-18).

79.     Walmart policy prohibited Plaintiff from entering the injury into IRS. (Taylor Dep. 128:9-15; Mehic Dep. 16:3-23; Keasler Dep. 20:14-22, 21:8-14).

80.     Ms. Taylor never contacted or disciplined Kadric for submitting the IRS report three days after Plaintiff's injury. (Kadric 1 Dep. 36:13-38:8).

81.     Nor was any investigation performed relating to Kadric's involvement in reporting Plaintiff's October 18 injury. (Kadribasic Dep. 404:24-406:6).

82.     Plaintiff emailed Ms. Taylor and Stinson on October 21 notifying them of her October 18 work accident. (Ex. 26 to Taylor Dep.).

83. Ms. Taylor did not respond that Plaintiff violated a work policy but instead said, "I hope you get better soon." (Ex. 26 to Taylor Dep.).

84. Plaintiff started the preparation efforts for a "One Day" sales event by holding a staff meeting on October 30 discuss preparation (Kadric 1 Dep. 39:17-41:15).

85. Holding a staffing meeting around October 30 was appropriate preparation. (Keasler Dep. 31:3-12, 33:24-34:20; Mathews Dep. 25:18-26:6).

86. In the following days, Plaintiff sent a number of "appropriate" instructions over email to prepare the club for the "One Day" sales event. (Harbel Dep. 61:18-66:22, 74:20-76:23; Ex. 42 and 45 to Harbel Dep.).

87. Plaintiff worked with Kadric to obtain the planning information from the Wire. (Kadric 1 Dep. 42:1-9).

88. Plaintiff and Kadric prepared a binder. (Kadric 1 Dep. 60:7-21, 74:8-75:3; Melson Dep. 55:4-56:15, 76:23-78:5, 109:14-24).

89. Plaintiff also appropriately had training action points prepared. (Ex. 5 to Keasler Dep., Keasler Dep. 36:3-39:18).

90. Throughout the week leading up the "One Day" sales event, Plaintiff had all merchandise organized and timely placed on the sales floor. (Kadric 1 Dep. 43:7-24; Ex. 2 to Melson Dep.; Melson Dep. 29:1-40:5, 49:1-59:18, 64:7-68:10, 70:2-72:24).

91. Third-party managers testified that the preparation done by Plaintiff was appropriate and timely. (Keasler Dep. 42:17-48:25; Melson Dep. 33:9-35:23).

92. When Ms. Taylor arrived at the Duluth club the morning of November 9, the club was as ready as it was supposed to be. (Melson Dep. 49:13-53:24, 59:19-24; Kadric 1 62:1-11-65:19; Kadric 2 Dep. 33:3-10).

93. The testimony of manager Harbel showed that the only area that may not have been "ready" was staffing and the cell phone "pull tickets". (Harbel Dep. 58:14-59:9, 76:9-16, 80:5-21; Ex. 5 to Harbel Dep., p. 3).

94. It was Harbel, not Plaintiff, who was the manager responsible for each. (Harbel Dep. 58:14-59:9, 76:9-16, 80:5-21; Ex. 5 to Harbel Dep., p. 3).

95. But Ms. Taylor did not investigate Harbel's responsibility. (Taylor Dep. 223:10-224:23).

96. Nor did Ms. Taylor interview Kadric, Plaintiff, or Melson the overnight manager before deciding to fire Plaintiff. (Taylor Dep. 226:4-227:23).

97. Further, Taylor's failure to investigate contravenes Walmart policy and demonstrates pretext. (Ex. 19 to Taylor Dep., Taylor Dep. 77:8-78:16).

98. There is universal consensus among Walmart's managers that the company's standard practice when two offending behaviors occur within the same proximity of time, to put them on a single coaching – two coachings are not given at the same meeting. (Martin Dep. 6:14-9:1, 85:12-86:15 (eighteen years' experience);

Keasler Dep. 16:23-17:6, 19:2-22:18 (22 years' experience); Mathews Dep. 5:19-6:2, 10:10-18 (15 years' experience); Mehic Dep. 14:4-15:19 (14 years' experience); Kadribasic Dep. 143:3-147:18).

Respectfully submitted this 21st day of July, 2020.

/s/ Douglas Kertscher
Douglas R. Kertscher
Georgia Bar No. 416265
Julie H. Burke
Georgia Bar No. 448095

Hill, Kertscher & Wharton, LLP
3350 Riverwood Pkwy.
Suite 800
Atlanta, GA 30339
404-953-0995 (ph.)
404-953-1358 (fax)
drk@hkw-law.com
jb@hkw-law.com

## **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in local rule 5.1(C) and 7.1(D).

This 21st day of July, 2020.

/s/ Douglas R. Kertscher
Douglas R. Kertscher, Esq.
Georgia Bar No. 416265

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ISMETA KADRIBASIC,<br><br>    Plaintiff,<br><br>v.<br><br>WAL-MART INC..<br><br>    Defendant. | Civil Action No.: 1:19-cv-03498-SDG-CCB |

## **CERTIFICATE OF SERVICE**

I hereby certify on this 21st day of July, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

This 21st day of July 2020.

                                                By:   /s/ Douglas R. Kertscher
                                                          Douglas R. Kertscher
                                                          Georgia Bar No. 416265

                                                          *Attorney for Plaintiff*