## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ISMETA KADRIBASIC,

    Plaintiff,

              v.

WAL-MART, INC.,

    Defendant.

Civil Action No.
1:19-cv-03498-SDG

## OPINION AND ORDER

This matter is before the Court on the Final Report and Recommendation (R&R) of United States Magistrate Judge Christopher C. Bly [ECF 122], which recommends that Plaintiff Ismeta Kadribasic's motion for sanctions [ECF 67] be granted in part and denied in part; Kadribasic's motion for summary judgment [ECF 104] be denied; and Defendant Wal-Mart, Inc.'s motion for summary judgment [ECF 107] be granted. On February 26, 2021, both parties timely filed objections to various aspects of the R&R.[1] On March 12, both parties filed responses.[2]

After careful consideration of the record, Kadribasic's objections are **SUSTAINED IN PART** and **OVERRULED IN PART** and Walmart's objections

---

[1]    ECF 125; ECF 126.

[2]    ECF 128; ECF 129.

are **SUSTAINED**. The R&R is **ADOPTED IN PART** and **DECLINED IN PART**. Kadribasic's motion for sanctions is **DENIED**; Kadribasic's motion for summary judgment is **DENIED**; and Walmart's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Additionally, Walmart's motion to strike [ECF 131] is **DENIED**.

## I.     BACKGROUND

The Court incorporates by reference the thorough recitation of the facts, procedural history, and legal standard for resolving a motion for summary judgment as set forth in the R&R. For purposes of this Order, the Court provides a brief summary of the pertinent facts as follows.

In March 2017, Kadribasic became the club manager of the Sam's Club store located in Duluth, Georgia (the Club).[3] In April 2018, Angela Taylor became the Atlanta-area market manager and, by extension, Kadribasic's supervisor.[4] On April 20, 2018, Taylor issued Kadribasic a written "coaching"—her first—due to the unsatisfactory condition of the Club.[5] On June 26, 2018, an incident occurred

---

[3]     ECF 111-1, ¶ 3; ECF 112-1, ¶ 3.

[4]     ECF 111-1, ¶ 11; ECF 112-1, ¶ 11.

[5]     ECF 96-2; ECF 111-1, ¶ 24.

involving the doors of the Club being left unlocked overnight.[6] As noted by the R&R, the parties dispute many of the specific facts underlying this incident.[7] However, it is undisputed that Taylor and other managers were aware of the unlocked doors incident by at least July 2, 2018, but Taylor did not issue Kadribasic a written coaching for this incident until November 8, 2018.[8]

From July 12, 2018 through October 7, 2018, Kadribasic was absent from the Club through a combination of paid time off and unpaid maternity leave.[9] Although Kadribasic had unused maternity leave, she voluntarily chose to return early on October 9.[10] On October 18, 2018, Kadribasic injured her back while working at the Club.[11] Hajra Kadric—the Club's general merchandise manager— was the only employee present with Kadribasic at the time of her injury.[12] That same day, Kadribasic completed a written "associate incident report."[13] She then

---

[6]   ECF 111-1, ¶ 29; ECF 112-1, ¶ 15. *See also* ECF 96-7.

[7]   ECF 122, at 6–7.

[8]   ECF 96-7; ECF 96-16; ECF 111-1, ¶ 31.

[9]   ECF 111-1, ¶¶ 37–39.

[10]  ECF 95 (Kadribasic Dep. Tr. 231:5–18); ECF 111-1, ¶ 53.

[11]  ECF 111-1, ¶ 61; ECF 112-1, ¶ 25.

[12]  ECF 111-1, ¶ 62.

[13]  ECF 95-29.

asked Kadric to "key in" the incident, which Wal-Mart's policy requires to be done within 24 hours.[14] The parties dispute whether Kadric emailed other managers—including Taylor and Darryl Stinson—about Kadribasic's injury, but it is undisputed that (1) Kadribasic communicated with Taylor later in the day without mentioning her injury; (2) she continued to work on October 19 and 20 without reporting her injury to Taylor; and (3) Kadric did not officially "key in" the incident until October 21.[15]

On that same day, Kadribasic first visited the emergency room because of her back pain; she later informed Taylor and Stinson that the emergency room doctor excused her from work for the next two days.[16] Two days later, Kadribasic visited another doctor who (1) diagnosed her with muscle strains and sciatica and (2) permitted her to return to work with certain restrictions.[17] These restrictions remained in effect until Kadribasic's next doctor's visit on October 25, when her doctor again permitted her to return to work with revised restrictions.[18] Kadribasic had another doctor's appointment on October 29, and on November 6, she texted

---

[14]   ECF 111-1, ¶ 65.

[15]   ECF 99 (Kadric Dep. Tr. 31:23–33:9); ECF 111-1, ¶¶ 63–66; ECF 112-1, ¶ 27.

[16]   ECF 95-31; ECF 111-1, ¶¶ 67–68; ECF 112-1, ¶ 28.

[17]   ECF 104-7, at 2; ECF 111-1, ¶ 73.

[18]   ECF 104-7.

Taylor and informed her that she would not be at work.[19] Later that day, Taylor and Stinson exchanged a series of text messages relating to Kadribasic's injuries.[20] Kadribasic visited her orthopedist the next day and did not come to work.[21]

On November 8, Kadribasic, Taylor, and Kadric met at the Club to prepare for a "One-Day Sale" event set to transpire on November 10.[22] The parties dispute the overall condition and readiness of the Club, as well as the degree to which Kadribasic physically struggled during a walk-through of the Club. Later that day—after receiving her second coaching for the June unlocked doors incident—Kadribasic went to physical therapy, the orthopedist, and ultimately the ER.[23] Her orthopedist permitted her to return to work with certain restrictions, but the ER doctor imposed no restrictions.[24]

The next morning (November 9), Kadribasic texted Taylor and informed her that, although experiencing pain, she would "probably" be at the Club for the final

---

[19]   ECF 97-15; ECF 97-17; ECF 111-1, ¶ 74; ECF 112-1, ¶ 34.

[20]   ECF 97-20. *See also* ECF 97 (Taylor Dep. Tr. 171:14–172:10).

[21]   ECF 112-1, ¶ 40.

[22]   *Id*. ¶ 41.

[23]   *Id*. ¶ 46.

[24]   ECF 96-19; ECF 104-7, at 11, 23; ECF 112-1, ¶ 47.

set up for the One-Day Sale event.[25] At 12:55pm, Taylor called Alejandro Munoz—an ethics investigator for Walmart—to inform him that she planned to terminate Kadribasic's employment; Munoz approved the termination.[26] Afterwards, Kadribasic requested paid time off from Taylor and submitted a request to Sedgwick—Walmart's third-party benefits administrator—for six weeks of "baby bonding" leave.[27] That evening, Kadribasic arrived at the Club; Taylor then gave her a third "coaching"—thus resulting in her termination—for not timely reporting or keying in her October 18 work injury.[28] Taylor also informed Kadribasic that she was being terminated for "Inability to Perform Job" based on the lack of preparation for the One-Day Sale event.[29]

On November 15, 2018, Kadribasic filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).[30] Kadribasic initiated this action on August 2, 2019.[31] She asserts four claims against Walmart premised on

---

[25]   ECF 111-1, ¶ 85. *See also id*. ¶ 91.

[26]   ECF 97 (Taylor Dep. Tr. 251:4–25).

[27]   ECF 96-21, at 49; ECF 111-1, ¶¶ 97–100, 105, 109; ECF 112-1, ¶ 52.

[28]   ECF 96-24; ECF 97 (Taylor Dep. Tr. 118:15–25); ECF 111-1, ¶ 101; ECF 112-1, ¶ 74.

[29]   ECF 111-1, ¶ 104.

[30]   ECF 95-24.

[31]   ECF 1.

(1) retaliation, discriminatory discharge, and failure to accommodate in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, *et seq.*, and (2) interference with her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*[32] On May 7, 2020, Kadribasic filed a motion for sanctions based on Walmart's alleged spoliation of evidence.[33] On July 21, the parties filed cross-motions for summary judgment.[34] The Magistrate Judge issued the instant R&R on February 12, 2021; both parties subsequently filed objections and replies.[35]

## II.   LEGAL STANDARD

A district judge has a duty to conduct a "careful and complete" review of an R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982). The Court reviews any portion of an R&R that is the subject of a proper objection on a *de novo* basis. 28 U.S.C. § 636(b)(1). The party challenging an R&R must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). The

---

[32]   *Id*.

[33]   ECF 67.

[34]   ECF 104; ECF 107.

[35]   ECF 122; ECF 125; ECF 126; ECF 128; ECF 129.

Court maintains the discretion—but is not obligated—to consider novel evidence and substantive legal and factual arguments raised for the first time in an objection to an R&R. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). In contrast, the Court need only review those portions of an R&R to which no objection is made for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). After conducting this review, the Court retains broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. 28 U.S.C. § 636(b)(1); *Williams*, 557 F.3d at 1290–92.

## III.   DISCUSSION

### A.   Walmart's Motion to Strike

On March 22, 2021, Kadribasic filed a reply brief in support of her objections to the R&R.[36] On March 25, Walmart submitted its motion to strike that filing.[37] Walmart is correct that neither the Federal Rules of Civil Procedure nor Local Rules authorize a party to file a reply to an R&R. Fed. R. Civ. P. 72(b)(3); LR 72.1(B), NDGa. *See also Kemp v. Gen. Growth Servs., Inc.*, No. 1:15-cv-01180-SCJ, 2017 WL 8217632, at *1 n.2 (N.D. Ga. Mar. 6, 2017); *Gore v. Jacobs Eng'g Grp.*, No. 1:13-cv-02547-MHS, 2016 WL 10654067, at *1 n.1 (N.D. Ga. Feb. 11, 2016).

---

[36]   ECF 130.

[37]   ECF 131.

Because Kadribasic did not request or obtain prior leave from the Court, her reply was improper. However, motions to strike are governed by Rule 12(f) and only permit the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). *See also S. River Watershed All., Inc. v. DeKalb Cty., Ga.*, 484 F. Supp. 3d 1353, 1362 (N.D. Ga. 2020) ("[M]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."). The proper vehicle to challenge such an impermissible filing is a notice of objection, not a separate motion to strike. *Id.* (collecting cases). Therefore, Walmart's motion to strike [ECF 131] is **DENIED**, but the Court declines to consider Kadribasic's reply brief improperly filed in support of her objections to the R&R.

### B.     Walmart's Objections

Walmart objects to the R&R's findings of fact and recommendation that the Court grant in part Kadribasic's motion for sanctions. In that motion, Kadribasic contends Walmart destroyed two types of evidence: (1) electronically stored plans for the One-Day Sale event, and (2) employee email accounts belonging to

Kadribasic, Kadric, and Chaneta Montoban.[38] The R&R recommended the Court deny the motion as to each type of evidence except for Kadric's email account.[39] Regarding Kadric's email account, the R&R found Kadribasic established each element for the spoliation of evidence based on Walmart's deletion of the account following Kadric's November 10, 2018 resignation. The R&R further found disputed issues of fact as to whether Walmart acted in bad faith. The R&R recommended that, in the event the case proceeded to trial and the jury found that Walmart acted in bad faith, the Court then instruct the jury that it may infer Kadric sent Taylor and others the specific email reporting Kadribasic's injury.

Walmart first objects to the R&R's threshold finding that Kadribasic established each element for spoliation. A party seeking sanctions based on the spoliation of evidence bears the burden of proving three elements: "(1) the missing evidence existed at one time; (2) [the alleged spoliator] had a duty to preserve the evidence; and (3) the evidence was crucial to [the movant] being able to prove [her] *prima facie* case." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d

---

[38] As noted in the R&R, Kadribasic initially raised an issue with a third category of evidence, but expressly withdrew that claim in her reply brief [ECF 122, at 22 n.10].

[39] Kadribasic did not object to the R&R's findings or recommendations as to the other categories of information. After a review of the record, the Court finds no clear error. The R&R is adopted in full as to those issues.

1299, 1305 (N.D. Ga. 2011). The R&R erred, avers Walmart, because Kadribasic did not establish the first element: *i.e.*, prove the disputed October 18, 2018 email from Kadric to Taylor, Stinson, and others actually existed.

On this point, the R&R found that "[n]either party disputes the first element, that the missing evidence existed at one time."[40] Walmart now clarifies that, although it does not dispute the existence and ultimate deletion of Kadric's entire *email account*, it does dispute—and has never conceded—the existence of the specific October 18, 2019 *email*. According to Walmart, Kadric never sent this specific email. After a *de novo* review of the record, the Court is not persuaded by Walmart's objection. Although the email's existence is contested, Kadribasic points to Kadric's deposition testimony in which the latter (1) unequivocally stated she sent the disputed email, (2) described its contents, and (3) detailed a subsequent email exchange with Stinson regarding Kadribasic's injury.[41] Walmart, nonetheless, characterizes the existence of this email as "implausible" because it was not found during a subsequent search of Taylor's and Stinson's email accounts. Even if true, that does not negate Kadribasic's affirmative evidence to

---

[40]   ECF 122, at 37.

[41]   ECF 67-8 (Kadric Dep. Tr. 31:2–32:24).

the contrary, which at the very least creates a disputed issue of fact. Walmart's first objection is overruled.

Walmart's second objection is that, even if the disputed email existed, Kadribasic has presented no evidence creating a fact question as to whether it acted in bad faith or committed sanctionable conduct. According to the Eleventh Circuit:

> When deciding whether to impose sanctions, a number of factors are relevant: (1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed.

*Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (citing *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018)). *See also Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005).

Kadribasic's motion—and Walmart's objection—hinges on the third factor of bad faith. The Eleventh Circuit recently reaffirmed that "[s]poliation sanctions—and in particular adverse inferences—cannot be imposed for negligently losing or destroying evidence." *Tesoriero*, 965 F.3d at 1184. Instead, "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d

929, 931 (11th Cir. 1997). "[B]ad faith in the context of spoliation [ ] generally means destruction for the purpose of hiding adverse evidence." *Tesoriero*, 965 F.3d at 1184. *See also id.* ("Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case."); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) ("While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference."); *Bashir*, 119 F.3d at 931 ("[U]nder the adverse inference rule, we will not infer that the missing speed tape contained evidence unfavorable to [the spoliating party] unless the circumstances surrounding the tape's absence indicate bad faith, *e.g.*, that [the spoliating party] tampered with the evidence.").

The R&R found issues of fact as to whether Walmart acted in bad faith. Specifically, the R&R (1) stated that "there is no specific evidence as to why [Walmart] did not preserve Kadric's emails," and (2) relied on evidence that another manager—Sherry Melson—testified that she witnessed Stinson and Taylor attempting to gain access to *Kadribasic's* email account on the night of her termination. The R&R found that this evidence "raises a question of whether Stinson and Taylor tampered with evidence by deleting any relevant emails, including copies of the alleged October 18 email sent by Kadric from their own

email accounts."[42] Walmart objects to this finding, arguing the R&R (1) "overlooked evidence" that Kadric's email account was purged in the normal course of business following her resignation, and (2) overstretched the significance and possible inferences from Melson's testimony.

After a *de novo* review of the record, the Court respectfully disagrees with the R&R and concludes Walmart's objections should be sustained. Kadribasic does not point to affirmative evidence that Taylor, Stinson, or any other Walmart employee intentionally deleted *Kadric's* emails prior to the routine purging of the latter's entire account after her resignation (which occurred shortly after Kadribasic's termination). Moreover, although Melson's testimony regarding Stinson and Taylor's actions regarding *Kadribasic's* email account raises the specter of some nefarious conduct, it says nothing about their actions related to their *own* or *Kadric's* accounts. Put another way, there is no evidence that Stinson or Taylor tampered with or deleted a single email located in those accounts. Although "[b]ad faith spoliation of evidence can be proved through circumstantial evidence"— *Instant One Media, Inc. v. EzFauxDecor, LLC*, No. 1:19-cv-00540-WMR, 2020 WL 4557075, at *2 (N.D. Ga. Jan. 28, 2020)—the record before the Court presents only

---

[42]   ECF 122, at 43–44.

speculation and conjecture. That is not enough to show bad faith sufficient to support an award of sanctions. Walmart's second objection is sustained. Kadribasic's motion for sanctions [ECF 67] is **DENIED**.

### C.    Kadribasic's Objections

Kadribasic objects to the R&R's findings of fact and recommendation that the Court grant Walmart's motion for summary judgment on her claims under the FMLA and ADA.[43] The Court addresses the claims under each statute separately.

### i.    Kadribasic's FMLA Objections

### a.    The FMLA's Notice Requirements

Kadribasic objects to the R&R's finding that she did not provide Walmart with proper notice of her intent to take FMLA leave. "The FMLA provides eligible employees the right to 12 weeks of leave for a serious health condition that makes the employee unable to perform the functions of her position." *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1274 (11th Cir. 2020) (citing *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018); 29 U.S.C. § 2612(a)(1)(D)). To establish an FMLA interference claim, "an employee need only demonstrate by a

---

[43] As noted, Kadribasic also filed her own motion for summary judgment. The R&R recommended the Court deny that motion. Kadribasic did not raise an objection to the R&R as to that recommendation. After a review of the record, the Court finds no clear error; the R&R is adopted on this issue and Kadribasic's motion is **DENIED**.

preponderance of the evidence that [s]he was entitled to the benefit denied." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206–07 (11th Cir. 2001). However, an employee must give "sufficient notice to [her] employer to invoke the substantive protections of the FMLA." *Id.* at 1208. "An employee's notice of her need for FMLA leave must satisfy two criteria—timing and content—both of which differ depending on whether the need for leave is foreseeable or unforeseeable." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015). Regarding timing, if the need for leave is unforeseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).[44] And for content, the Eleventh Circuit has held that "an employee need not explicitly mention the FMLA when giving notice to her employer." *White*, 789 F.3d at 1196. *See also Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) ("An employee is not required to assert expressly her right to take leave under the FMLA."). At a minimum, "the notice must be sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." *Cruz*, 428 F.3d at 1383 (citing 29 C.F.R. § 825.302(c)).

---

[44] Neither party objects to the R&R's finding that Kadribasic's need for leave based on her alleged back injury was unforeseeable.

*See also White*, 789 F.3d at 1196 ("If the need for leave is unforeseeable, an employee need only provide sufficient information for her employer to reasonably determine whether the FMLA may apply to the leave request.") (brackets omitted).

In her briefing on the cross-motions for summary judgment, Kadribasic points to evidence showing she discussed or displayed her need or desire to take FMLA leave due to her back injury with Taylor on October 28, October 29, November 6, and November 8. The R&R found that Kadribasic's requests did not satisfy the content requirement, as they were "too uncertain to constitute sufficient notice under the FMLA."[45] Kadribasic objects to this finding, arguing the evidence is enough to raise a fact question as to sufficient notice. After a *de novo* review of the record, the Court respectfully disagrees with the R&R and believes that, viewed as a whole in a light most favorable to Kadribasic as the non-movant, the identified communications with Taylor were enough to create a fact question as to whether the latter was aware of Kadribasic's need or desire to take FMLA leave.

That is not, however, the end of the Court's inquiry. In its briefing on the cross-motions for summary judgment—and again in its response to Kadribasic's

---

[45]   ECF 122, at 87.

objections to the R&R—Walmart argued Kadribasic cannot show she was entitled

to FMLA leave because she did not comply with Walmart's internal FMLA policy

for requesting leave. The R&R acknowledged Walmart's argument, but chose not

to address it based on Walmart's substance-based notice argument.[46] After a *de*

*novo* review of the record, the Court finds Walmart's position persuasive. Under

the FMLA:

> When the need for leave is not foreseeable, an employee
> must comply with the employer's usual and customary
> notice and procedural requirements for requesting leave,
> absent unusual circumstances. For example, an employer
> may require employees to call a designated number or a
> specific individual to request leave. . . . If an employee
> does not comply with the employer's usual notice and
> procedural requirements, and no unusual circumstances
> justify the failure to comply, FMLA–protected leave may
> be delayed or denied.

29 C.F.R. § 825.303(c). *See also Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 789

(5th Cir. 2017) ("Even when an employee's need for leave is unforeseeable, the

regulations make clear the employee's duty to comply with the employer's

policy."); *Crawford v. City of Tampa*, 464 F. App'x 856, 858–59 (11th Cir. 2012)

("Absent unusual circumstances, an employee must also comply with an

---

[46] *Id.* at 86.

employer's usual and customary notice and procedural requirements for requesting leave.").

Walmart presents evidence that it maintained internal "FMLA Leave of Absence Management Guidelines" that "outline the procedures that must be followed when an associate requests FMLA leave."[47] That internal policy stated:

> Associate Requirements:
>
> The policy requires associates to notify their manager and Sedgwick 30 days in advance of the need to take FMLA leave, if the need for leave is foreseeable. Sedgwick will not deny an associate's request for failure to provide 30-day advance notice. If the need for leave is **not foreseeable** and the associate is unable to give 30 days' advance notice, s/he must do so "as soon as practicable," generally the same day or the following business day after learning that s/he needs to take leave. . . . **The associate must contact Sedgwick to request a leave of absence**. The associate must also submit the completed applicable certification forms provided by Sedgwick.[48]

Kadribasic testified that Walmart provided her with training on, and she was familiar with, Walmart's policies regarding requesting FMLA leave.[49] Specifically, Kadribasic stated that she knew Sedgwick—and not a supervisor

---

[47]   ECF 97-3, at 1.

[48]   *Id.* at 1–2 (emphasis added).

[49]   ECF 95 (Kadribasic Dep. Tr. 97:2–98:16; 160:6–25; 225:12–227:28).

(*i.e.*, Taylor)—must decide if an employee is entitled to FMLA leave.[50] To be sure, Kadribasic previously followed this policy and had been granted FMLA leave by Sedgwick.[51] However, it is undisputed that Kadribasic did not follow Walmart's policy and did not contact Sedgwick between October 28 and November 8. Kadribasic only spoke with Taylor.[52] Kadribasic did not request FMLA leave from Sedgwick until November 9, after Taylor had already received permission to terminate Kadribasic's employment. Given the undisputed evidence that Kadribasic failed to comply with Walmart's policy regarding requesting FMLA leave, a policy she knew and had followed previously, and the absence of any evidence showing unusual circumstances that prevented her from complying with that policy, Kadribasic cannot show that she was entitled to FMLA leave or

---

[50] *Id.* at 225:12–227:28.

[51] ECF 111-1, ¶ 39.

[52] The Court acknowledges that, if Kadribasic's communications to Taylor factually constitute sufficient FMLA notice, then Taylor likewise did not satisfy her own obligations under Walmart's policy, which stated that "[w]hen you become aware of an associate's need or request to take FMLA leave, direct the associate to contact Sedgwick." [ECF 97-3, at 2.] Nonetheless, the Court concludes that Taylor's potential failure to act does not obviate Kadribasic's independent obligation under the FMLA's regulations to notify the appropriate decision-maker.

suffered interference with her FMLA rights. 29 C.F.R. § 825.302(c). Kadribasic's objection is overruled.

### b.   Job Reinstatement Under the FMLA

Kadribasic also objects to the R&R's findings as to her FMLA claim because the Magistrate Judge allegedly did not consider her separate "reinstatement claim." Distinct from an interference claim, the FMLA conveys a substantive right to reinstatement; "an employee returning from covered leave is entitled to be restored to his former position or its equivalent." *Strickland*, 239 F.3d at 1208 (citing 29 U.S.C. § 2614(a)(1); *O'Connor v. PCA Fam. Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000)). According to Kadribasic, Walmart impermissibly terminated her employment while she was on FMLA leave from November 5 through November 9, 2018. The premise of this argument is flawed. Kadribasic incorrectly assumes she was on FMLA leave during that period. As stated above, she did not request FMLA leave from Sedgwick, and hence, Walmart, until November 9. It is also undisputed that Kadribasic reported to work on various occasions during this time period. This undermines any suggestion that Kadribasic was on FMLA leave. Kadribasic's objection is overruled.

### ii.   Kadribasic's ADA Objections

In her Complaint, Kadribasic asserts three separate substantive claims under the ADA for (1) retaliation, (2) discriminatory discharge, and (3) failure to accommodate. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, discrimination includes "not making reasonable accommodations" as to a qualified employee's disability. *Id*. at § 12112(b)(5)(A). The ADA additionally prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter." *Id*. at § 12203(a). Absent evidence of direct discriminatory intent, courts evaluate discrimination claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Collier v. Harland Clarke Corp.*, 820 F. App'x 874, 878 (11th Cir. 2020). However, this framework is not applicable to a reasonable accommodation claim. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007).

To establish a *prima facie* case of discrimination under the ADA, an employee must demonstrate that, "at the time of the adverse employment action, she had a

disability, she was a qualified individual, and she was subjected to unlawful discrimination because of her disability." *United States Equal Emp. Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016) (citing *Holly*, 492 F.3d at 1255–56 (11th Cir. 2007)). *See also Munoz*, 981 F.3d at 1272 ("The ADA protects an employee who (1) has a disability; (2) can perform the essential functions of her job with or without reasonable accommodations; and (3) is subjected to unlawful discrimination because of her disability."). A *prima facie* case of retaliation requires an employee to demonstrate that: "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001); *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998)).

The R&R found Kadribasic failed to establish a *prima facie* case as to each of her claims and recommended Walmart's motion for summary judgment be granted on each cause of action. Specifically, for her disparate treatment and reasonable accommodation claims, the R&R found Kadribasic did not raise an issue of fact showing she was disabled. And for her retaliation claim, the R&R found Kadribasic did not present facts showing that (1) she engaged in statutorily protected activity, or (2) a causal connection between the alleged protected activity

and the adverse employment action. Kadribasic's objections challenge numerous aspects of the R&R's reasoning and argue that fact questions exist as to whether she was disabled under the ADA.

Kadribasic does not object to the R&R's finding that she failed to present evidence creating a fact issue as to the third element of her retaliation claim: *i.e.*, a causal connection between her alleged disability and termination. Much like her underlying summary judgment briefing, Kadribasic's ADA objections are wholly focused on her alleged disability. After a review of the record, the Court finds the R&R did not commit clear error on this point. The Court agrees that Kadribasic has not presented sufficient facts demonstrating a *prima facie* case of retaliation. The Court adopts the R&R as to this claim and Walmart is entitled to summary judgment on Count I.

The next question is whether Kadribasic has pointed to sufficient evidence creating a fact question as to her alleged disability to support her discrimination claims. The R&R applied the correct legal standards; the ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities "include, but are not limited to, caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A).

"To qualify as disabled under the ADA, the employee must be substantially limited in a major life activity as compared to most people in the general population." *Munoz*, 981 F.3d at 1272. *See also Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1180 (11th Cir. 2019) ("[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."); *Vaughan v. World Changers Church Int'l, Inc.*, No. 1:13-cv-0746-AT, 2014 WL 4978439, at *8 (N.D. Ga. Sept. 16, 2014) ("[C]ourts are instructed that the term substantially limits shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.") (punctuation omitted). Separately, an employee is "regarded as" disabled "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). *See also Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 468 (11th Cir. 2012) ("[A] plaintiff need demonstrate only that the employer regarded him as being

impaired, not that the employer believed the impairment prevented the plaintiff from performing a major life activity.").

The R&R concluded that Kadribasic did not raise a genuine issue of fact as to whether she was disabled under the ADA. Specifically, the R&R determined Kadribasic pointed to no evidence demonstrating the "severity, frequency, and duration" of her alleged injuries.[53] The R&R additionally found her physician-prescribed work restrictions provided no indication as to the severity of her alleged injuries. In a similar vein, the R&R concluded that Kadribasic's reliance on a November 6, 2018 text message communication between Taylor and Stinson discussing Kadribasic's alleged injuries did not create a fact issue as to whether Walmart regarded her as disabled.

After a *de novo* review of the record, the Court respectfully disagrees with the R&R and concludes Kadribasic's objections should be sustained. At the outset, the Court does not agree with Kadribasic that the R&R "struck out on its own" and ruled on issues not raised in the underlying briefing. Walmart expressly moved for summary judgment on the theory that Kadribasic failed to establish the first element of her *prima facie* case: *i.e.*, to show that she was disabled. The parties

---

[53]   ECF 122, at 67–68 (citing *Lewis*, 934 F.3d at 1190; *Munoz*, 981 F.3d at 1273).

extensively briefed this issue. And the Magistrate Judge was well within his discretion to rely on binding Eleventh Circuit precedent not directly cited by Walmart. Put another way, unlike the plaintiff in *Roe v. City of Atlanta*, 456 F. App'x 820, 822 (11th Cir. 2012), Kadribasic had clear notice of her obligation to present evidence establishing each element of her *prima facie* claim, including her alleged disability.

However, considering the entire record (including the Court exercising its discretion to view the evidence submitted by Kadribasic in her objections to the R&R)[54] in a light most favorable to her—and construing all reasonable inferences in Kadribasic's favor—the Court concludes that there are questions of material fact as to whether she was disabled. Kadribasic's deposition testimony, coupled with her series of physician-prescribed work restrictions and medical records, are enough for a reasonable factfinder to conclude that she was substantially limited in performing one or more of her major life activities. *E.g., Mazzeo*, 746 F.3d at 1270 (reversing district court's grant of summary judgment in defendant's favor and finding issues of fact regarding plaintiff's alleged disability); *Rogers v. Mediacom, LLC*, No. 1:13-cv-157 (WLS), 2015 WL 5722795, at *5 (M.D. Ga. Sept. 29, 2015)

---

[54]   *Williams*, 557 F.3d at 1292.

("Plaintiff throughout his employment with Defendant after his injury was restricted from lifting substantial weight in addition to other restrictions after his injury restricted him from bending, etc. In the view of the Court, considering the restrictions Plaintiff had, there is a sufficient dispute, based on the evidence, as to whether Plaintiff is disabled."). *Cf. Vaughan*, 2014 WL 4978439, at *9 ("[E]ven temporary impairments—those lasting less than six months—can be substantially limiting within the meaning of § 12102(1)(A).") (citing 29 C.F.R. § 1630.2(j)(1)(ix)). Further, the Court concludes that reasonable inferences stemming from Taylor and Stinson's November 6, 2018 text conversation raise a material fact question as to whether Taylor *regarded* Kadribasic as disabled.[55] Therefore, the Court sustains Kadribasic's objections as to whether she was disabled or regarded as disabled.

A final issue remains. Because the R&R found Kadribasic did not establish the threshold element of disability, it did not reach the other elements of her claim. Walmart challenges some of these in its underlying summary judgment briefing. For example, Walmart argues Kadribasic cannot proceed on her disparate treatment claim because she did not establish the third *prima facie* element: causation. And even if she did, avers Walmart, under the *McDonnell Douglas*

---

[55]   ECF 97-20.

framework, she cannot prevail on the pretext element. *See Connelly v. WellStar Health Sys., Inc.*, 758 F. App'x 825, 828 (11th Cir. 2019) ("If an employee makes [a *prima facie*] showing, the burden shifts to her employer to articulate a legitimate, non-discriminatory reason for the challenged action. If the employer does so, the burden shifts back to the employee to show that the employer's proffered reason is mere pretext.") (internal citation omitted). Based on a careful review of the record, the Court finds Kadribasic has presented evidence raising genuine questions of fact as to each of these elements. For example, Taylor's and Stinson's text messages on November 6 constitute evidence that would allow a reasonable factfinder to draw a causal connection between Kadribasic's alleged disability and her termination. Likewise, the timing of Kadribasic's second coaching for the unlocked doors incident raises a fact question as to pretext.

Walmart also argues Kadribasic cannot establish that it failed to provide her with a reasonable accommodation sufficient to establish that claim. In her response, Kadribasic argues Walmart denied her the reasonable accommodation of leave. In the Eleventh Circuit, "a leave of absence might be a reasonable accommodation in some cases." *Billups v. Emerald Coast Utilities Auth.*, 714 F. App'x 929, 934 (11th Cir. 2017) (citing *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003)). *See also Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1225 (11th Cir. 1997). The Court

concludes that the factfinder must be tasked with weighing the evidence to determine if Kadribasic's requests for leave should have been granted as a reasonable accommodation. Kadribasic's objection is sustained. Walmart is not entitled to summary judgment on Kadribasic's ADA discrimination claims.

## IV.   CONCLUSION

The R&R [ECF 122] is **ADOPTED IN PART** and **DECLINED IN PART**. Kadribasic's motion for sanctions [ECF 67] is **DENIED**; Kadribasic's motion for summary judgment [ECF 104] is **DENIED**; and Walmart's motion for summary judgment [ECF 107] is **GRANTED IN PART** and **DENIED IN PART**. Additionally, Walmart's motion to strike [ECF 131] is **DENIED**. Kadribasic may proceed only on Counts II and III of her Complaint. The parties are **DIRECTED** to file their proposed pretrial order within 30 days after entry of this Order.

**SO ORDERED** this the 30th day of March 2021.

Steven D. Grimberg
United States District Court Judge